1817.

Chambers-
burg.

WILSON *against* BELINDA.

IN ERROR.

*Monday,*
September 29.

In the registry of a slave, under the act of 1st March, 1780, it is not necessary, that it should have been set forth, whether the person registered were a slave for life, or servant till 31 years of age.

But it is necessary, that the sex should be expressly stated, and though the name be such as might imply the sex, it does not cure this defect.

It is not necessary for the person registering a slave, to set forth the town or county in which he resides; it is sufficient, if the slave be registered in the county where the owner resides.

If the registry does not state the occupation of the owner of a slave, parol evidence may be given to shew he had none.

ERROR to the Court of Common Pleas of *Adams* county, upon a *homine replegiando*, in which the question was, whether a negro woman, *Belinda*, the plaintiff below, was duly registered under the act of 1st *March*, 1780.

In the Court below judgment was given for the plaintiff. The return made to the clerk of the Quarter Sessions was as follows :

"*Carlisle, September* 26th, 1780.

"A return of negroes belonging to *John Montgomery.*

"A wench called *Dinah*, about 36 years of age.
"*Venia*, a child, about 8 years old.
"*Venius*, do.　　　6　do.
"*Tom*, a boy, about　4　do.
"*Dick*, do.　　　1½ do.
"A wench named *Jane*, about 22 years old ; her child,
"*Belinda*, born in *Maryland*, about 23 months old. *Juba*,
"a boy, about 13 years old.

"*JOHN MONTGOMERY.*"

The following was the entry made in a book, kept for the registry of negro and mulatto *slaves*, in the office of the clerk of the Court of Quarter Sessions of *Cumberland* county.

"26th *September*, 1780.

"*JOHN MONTGOMERY*, esq. *Carlisle.*

"*Dinah*, a negro wench,　-　36 years.
"*Venia*, a negro,　　-　-　8
"*Venius*, a negro,　　-　·　-　6
"*Tom*, a negro,　　-　-　4
"*Dick*, a negro, -　　-　-　1½
"*Jane*, a negro,　　-　-　22
"*Belinda*, a negro,　　-　-　23 months.
"*Juba*, a negro,　　-　-　13 years."

*Watts*, for the plaintiff in error. Previous to the act of 1780, there were two classes of persons held to labour, *viz.* negro slaves, and servants till the age of 31. The servants till 31, were mulattoes; the slaves were negroes. Exceptions are taken in this case,

1. That the return of the master does not distinguish, whether the person registered was a slave for life, or servant for 31 years. But the act of 1780, does not require such designation. In case of dispute, the fact may be inquired into.

2. That the sex is not named. We answer, that the name *Belinda*, implies the female sex.

*M'Conachy*, for the defendant in error. If the law is not complied with, it is the owner's fault. None but the owner or his attorney, can make the registry. *Essex* v. *M'Cullough*, 1 *Smith's Laws*, 497.

1. It does not appear, by the return, in what county the owner lived; and this defect is not cured by the clerk's entry. Neither township, district, or ward, is mentioned.

2. It is not stated, whether the person was a slave for life or 31 years. This is a material objection.

3. The sex is not mentioned, and this the law expressly requires. The name, *Belinda*, does not designate the sex.

TILGHMAN C. J. The question in this case is, whether the negro woman, *Belinda*, was duly registered as a slave, under the act of 1st *March*, 1780.

1. The first exception is, that the registry does not distinguish, whether *Belinda* was a slave for life, or a servant for 31 years.

The object of this act of assembly was to produce a gradual abolition of slavery; but the property of the master, as to slaves then in existence, was fully recognised. It was well understood, that property ought not to be taken away without compensation. If slavery had been deemed altogether incompatible with the public good, freedom would have been purchased by a reasonable price paid to the master; and the object being for the good of all, the expense would have been defrayed by a tax, to which all would have contributed. But it was thought that no harm would result, from leaving the right of property unimpaired as to existing slaves; provided means were taken for ascertaining, by a public registry, those per-

sons who were either slaves, or servants for 31 years, at the time of the passing of the law. In the return to be made by the master, he is directed to give " the names of all slaves or " servants for life, or till the age of 31 years, together with " their ages and sexes severally and respectively set forth and " annexed, in order to ascertain and distinguish the slaves " and servants for life; and till the age of 31 years, from all " other persons." The act, then, does not direct, that the circumstance of *slave* or servant *for life* or *years*, should be inserted ; neither does the *avowed object* require it, *viz.* to distinguish those slaves and servants, *not from each other*, *but from all other persons*. What right then, has this Court to superadd a particular, not required by the law, because it might seem, that the law would have been more perfect, if it had required it ? The act creates a forfeiture of property in case of a defective registry, and therefore, where there appears to have been an intent to comply honestly with all its directions, the construction should be liberal in favour of the master. This is the spirit in which it has hitherto been considered. So that to adopt a different mode of construction now ; to extend the statute, *by equity*, in favour of freedom, and against the right of property, would be to depart unwarrantably from former decisions. I am, therefore, of opinion, that the registry is good, though it does not expressly say, whether *Belinda* was a slave for life or servant for years. Understanding, that there are other cases, depending on this exception, I have thought it best to be thus explicit in my opinion, although I think there is a sufficient implication that *Belinda* was a slave for life, being returned, as " *a negro be-* " *longing to John Montgomery*."

2. The second exception is, that the *sex* is not mentioned. In answer to this, it is said, that *the sex is implied in the name*, and therefore there was no occasion to be more explicit. The answer is not satisfactory. It may be very true, that every one who hears the name of *Belinda*, would suppose at once, that the person was a female. The name, however, is not a certain criterion of sex ; for men are sometimes called by the names generally given to women, and *vice versa*. But we are not left to argument on this matter ; the law is *express*, that the name shall *not* be the criterion of sex, because it requires, that *the name, together with the age and sex, shall be set forth*. To decide then, that the name alone is

sufficient, when the law says, that the sex also shall be mentioned, would, in my opinion, be to contradict the law, under pretence of construing it. I am not for shaking former decisions. As far as they have gone, they have become a rule of property. But I know of no decision which dispenses with the insertion of the *name*, the *sex*, or the *age* of the slave. You need not say expressly, *of the male or female sex*. Any thing which accertains the sex with reasonable certainty will do. A man, a woman, a boy, a girl, a wench, &c. are sufficient. But nothing of the kind being here given, I am of opinion, that the registry is fatally defective.

3. The third exception is, that in the return made by *John Montgomery*, the township and county, in which he resides, is not set forth. This exception is not good. The return is headed "*Carlisle, September* 26th, 1780," which to a reasonable intent expresses, that the person making the return, lived at *Carlisle*. Besides, it was decided in *Cook* v. *Neaff*, 1 *Smith's Laws*, 497, that if the owner of a slave registers him in the county in which he resides, the registry is good, although the county be not expressed.

4. The last exception is, that the *occupation* of *John Montgomery* is not expressed. The act requires the occupation to be mentioned. But suppose a man has no occupation, he is not required to do what is impossible. I agree therefore, with the President of the Court of Common Pleas, that parol evidence might be given, to shew that *Montgomery* had no occupation. I agree also with the President, that the addition of *esquire* after the name of *Montgomery*, inserted in the registry, by the clerk, although not contained in the return signed by *Montgomery*, and made on a separate paper, may fairly be taken into consideration.

Upon the whole, although my opinion does not agree in all respects, with that of the Court of Common Pleas, yet it does, upon the validity of the registry. Considering it altogether, I am of opinion, that it was not according to the act of assembly, and therefore *Belinda* is entitled to her freedom. The judgment is to be affirmed.

GIBSON J. The provisions of the fifth section of the act of 1780, were not intended for the benefit of negroes who were then slaves, but of those who were free, by distinguishing them from the slaves ; and were it not, therefore, for the

1817.

WILSON
v.
BELINDA.

imperative terms of the concluding part of that and the tenth section, I would be disposed to construe the act favourably for the master; especially as it would not lie in the mouth of the slave to object that an act performed, not for his benefit, but to perpetuate his slavery, had not been executed in all its forms and in every particular. But very differently do I view the act of 29th *March*, 1788; the operation of which was intended to be exclusively for the benefit of the servant registered, by furnishing him with evidence, conclusive of the termination of the servitude, when that period should arrive. In every case of a registry, under the latter, I, for one, shall hold the master to a strict and formal execution of every thing enjoined, except where express decisions of this Court may have established a contrary construction. The servant has nothing to do with either the fraud or mistake of the master, who is to make the registry at his own peril; and if it be not done so as to give the servant the benefit of every thing intended to be secured to him by the act, the master, who is the author of the mischief, and not the servant, should suffer. But however I might be disposed to consider the provisions of the act of 1780, (under which the registry in this case was made,) if a penalty were not attached to non-performance, yet as it specially and particularly points out what shall be contained in the paper to be delivered to the clerk of the Sessions, as the *substratum* of the registry, and emphatically declares that " no man or woman, of any nation or colour, except the negroes and mulattoes *who shall be registered as aforesaid*, shall at any time hereafter be deemed, adjudged, or holden, within the territories of this commonwealth, as slaves, or servants for life, but as free men, and free women," I should think I took an unwarrantable liberty with the expressions of the legislature, were I to carry the construction further against the slave than the decisions have already done. It was held in *Cook* v. *Neaff*, that the registry is good, though the county in which the master lives is omitted; and I am content that the law shall be so. I agree also, that the registry of a negro, as a slave, without saying for life, or otherwise distinguishing him from a servant for years, is good, as was held in *Respublica* v. *Findlay;*(a) for the act requires no such distinction. As far as cases have al-

(a) 1 *Smith's Laws*, 497.

ready gone, I am willing to go ; but not a jot further : and this too, not because I am convinced of the propriety of those decisions, but because I am averse from disturbing any thing like a settled rule. But most clearly, every other particular required by the act, must be strictly complied with; and for this simple reason, that the act declares the slave shall be free, if it be not. In the paper delivered by *John Montgomery* to the clerk of the Sessions, neither his own occupation or profession, nor the sex of the plaintiff, is set forth; and, for both these reasons, I hold the registry to be void. It is true, that in entering the return, the clerk has added the word *esquire* to the name of *John Montgomery;* but that cannot mend the matter, because the act requires the occupation to be set forth on the original paper, and the title *esquire* denotes no occupation or profession whatever, being bestowed by courtesy on all civil officers, without regard to the nature and variety of their several duties. It is said a man may, in fact, have no occupation, and, in that case, it would be impossible for him to comply with the letter of the law, if he were bound to state a profession. True : but, then, the fact should appear on the face of the return ; for he is to be excused only by special circumstances, and those ought to be shewn. Nothing can be supplied by intendment, or by the act of the clerk; for the law is positive, that the original paper shall contain every thing. But what if it be lost? Then the registry becomes the best, and, indeed, the only evidence of its contents. But where it is not lost, and appears defective on its face, nothing can cure it : And I deem those circumstances of description that pertain to the person of the master, as essential as those which regard the slave : for, although the words of the act are, that the slave shall be free " unless *his or her name* be entered, *as aforesaid,* on such record," the meaning, evidently, is that it shall be entered of record, in pursuance of a return containing every thing required by the law. A mere entry, by the clerk, without such return, would be void; and a return differing from that specified by law, would be a nullity. The objection, that the sex is not set forth, is clearly fatal ; and I have heard nothing like an answer attempted to be given to it. We cannot recognise the name *Belinda* as being exclusively that of a female, or as sufficiently indicating a particular sex;

VOL. III.—3 E

Serg. & R,
3s r402
132   93

1817.   for the act requires the age and sex to be " *severally* and *re-*
WILSON  *spectively* set forth." This was not done ; and the judgment
*v.*    must be affirmed.
BELINDA.

DUNCAN J. expressed his concurrence with the opinion of
the Chief Justice.

Judgment affirmed.